# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
September 25, 2013 Session

## KRISTEN ELIZABETH RIEDEL v. NATHAN ALAN RIEDEL

**Direct Appeal from the Chancery Court for Montgomery County**
**No. MCCHCVD108139      Laurence M. McMillan, Judge**

**No. M2011-01111-COA-R3-CV - Filed November 4, 2013**

Father appeals the parenting plan naming Mother primary residential parent entered by the trial court in this divorce action. We remand for further proceedings, if necessary, and findings regarding the comparative fitness of the parties.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Remanded**

DAVID R. FARMER, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and J. STEVEN STAFFORD, J., joined.

Mart G. Fendley, Clarksville, Tennessee, for the appellant, Nathan Alan Riedel.

Lawrence James Kamm and Helen Sfikas Rogers, Nashville, Tennessee, for the appellee, Kristen Elizabeth Riedel.

## MEMORANDUM OPINION[1]

This appeal arises from a divorce action filed by Kristen Elizabeth Riedel ("Mother") against Nathan Alan Riedel ("Father") in the Chancery Court for Montgomery County in May 2008. The gravamen of this appeal is whether, in light of the geographical distance between the parties' homes, the trial court erred by naming Mother primary residential parent

---

[1]Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

and granting Mother parenting time during the school year and Father parenting time on alternate weekends, during the summer, and holidays.

Mother and Father were married in Denmark in 2004. Both were United States Army Officers at the time of the marriage. One child was born of the marriage in August 2007, and the parties separated in March 2008. Mother is now employed as a civilian with the Department of Defense and lives in Clarksville, Tennessee. During the pendency of this matter in the trial court, Father was based in Cleveland, Ohio. Apparently, Father is now based at Fort Knox, Kentucky.

Following protracted and acrimonious proceedings, this matter was heard by the trial court on April 9, April 30, June 9, August 6, and September 10, 2010. On May 11, 2011, the trial court entered a final decree of divorce and proposed permanent parenting schedule awarding Mother and Father 182.5 days of parenting time each, divided into two week intervals. The trial court reserved the matter of which parent would be named primary residential parent. Mother filed a notice of appeal to this Court on May 18, 2011.

On June 7, 2011, Mother filed a Rule 59 motion to alter or amend the judgment to name a primary residential parent and revise the parenting schedule. In her motion, she asserted that it was not in the child's best interest to travel for ten hours every two weeks as necessitated by the May 2011 parenting plan. She further asserted that she had a permanent residence in Clarksville while Father's future place of residence was uncertain. Mother additionally asserted that the plan made no provision for school, that the parties' child would begin pre-kindergarten in August 2011, and that under the current plan he would miss fifty percent of school.

Following a hearing in August 2011, by order entered September 2011 the trial court determined that Mother should be named primary residential parent. The trial court also determined that when the parties' child reached kindergarten age, the parenting time would be altered such that Mother would receive 225 parenting days and Father would receive 140 parenting days. The trial court set Father's "school age" parenting time at every other weekend from Friday at 6:00 PM to Sunday at 6:00 PM, and at other times as agreed by the parties. Under the school age parenting schedule, the trial court awarded Father parenting time during all holidays. The trial court also awarded Father parenting time during the summer vacation, awarded Mother summer parenting time every other weekend, and set child support. In October 2011, Father filed a motion to alter or amend the child support order. Following a hearing in December 2011, the trial court found it had erred in its interpretation of Mother's Leave and Earnings Statement and amended the child support order accordingly.

In February 2012, Mother filed a motion in the trial court to dismiss her appeal pursuant to Rule 15 on the ground that she was unable to locate transcripts of the proceedings in the trial court. Father filed a response, asserting that Mother's motion should be dismissed where she had failed to file it in the proper court. On March 1, 2012, Mother filed a motion for voluntary dismissal in this Court, which we granted on March 15. Father filed a motion to reinstate the appeal, which we granted on March 22, ordering that the appeal would proceed with Father acting as appellant.

The issues presented on appeal, as we perceive them, are whether the trial court erred by naming Mother residential parent and by modifying the alternating "fifty-fifty" parenting schedule. In his brief, Father asserts that the modified schedule is not in the child's best interest where it does not allow Father to participate in his life to the maximum extent possible consistent with Tennessee Code Annotated § 36-6-106(a). On one hand, Father asserts that the fifty-fifty split in parenting time established by the May 2011 parenting plan, with the child alternating between school systems upon reaching school age, is in the child's best interests. Father submits:

> [He] has been spending even amounts of time with both his parents. Without school rotation, the stability and continuity which [he] has been able to enjoy, with close to equal shared parenting time, will be interrupted regardless of who is named the Primary Residential Parent. [He] will go from seeing both parents evenly to being with only one parent the majority of the time.

Father states, "[e]ven with this brief the Father seeks to keep the fifty fifty pattern." Father asserts that, in the alternative he should be named primary residential parent. Father also submits that the trial court stated that its ruling was "against [ its] better judgment."

### *Discussion*

As an initial matter, we address Father's implication in his brief that the trial court inexplicably modified the parenting plan to name Mother primary residential parent "against [the trial court's] better judgment." Upon review of the transcript of the August 5, 2011, hearing before the trial court, we observe that the trial court stated the it was not the court's "practice to order future conduct with contingencies . . . because you never really know what the future holds." Thus, the trial court did not name Mother primary residential parent against its better judgment. Rather, the court stated that establishing any future plan based on future contingencies was against its better judgment. We accordingly reject Father's characterization of the court's statement. We additionally note that, although the initial divorce proceedings were heard on five days in 2010, the record before us contains only a transcript of a hearing held on June 9, 2010. At the end of that hearing, the trial court noted

that four witnesses remained to testify, and the matter was not concluded. Additionally, the partial "statement of the evidence" contained in the supplemental record summarizes Father's testimony at a hearing that, according to the statement, was held in December 2010. Thus the record transmitted to this Court contains neither a complete statement of the evidence nor a complete transcript.

We review the trial court's determination of child custody under an abuse of discretion standard, affording the trial court great deference. *E.g., Herrera v. Herrera*, 944 S.W.2d 379, 385 (Tenn. Ct. App.1996). This Court will not interfere with the trial court's determination absent a palpable abuse of discretion or unless the judgment is against the great weight of the evidence. *Id.* at 386. This deferential review is premised on the assumption that the trial court first considered the best interests of the child in making the custody determination and did not act arbitrarily. *Id.* When making a custody determination, the trial court is required to engage in a comparative fitness analysis of the parents. *Gaskill v. Gaskill*, 936 S.W.2d 626, 630 (Tenn. Ct. App. 1996). In so doing, it must consider the factors outlined by the legislature as codified at Tennessee Code Annotated § 36-6-106. *Id.* Custody determinations are thus based on a combination of subtle factors, and require a factually based inquiry. *Id.* The trial court is in the best position to weigh the facts presented to it, and to assess the credibility of the parties. *Id.* Although the trial court's discretion is not without limit and its determinations must be based on the evidence and appropriate legal principles, we will not disturb the trial court's determinations absent an abuse of discretion. *Hogue v. Hogue*, 147 S.W.3d 245, 251 (Tenn. Ct. App. 2004). We review the trial court's determination of the facts regarding the comparative fitness of the parents *de novo*, presuming those findings to be correct unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *In re Clark*, No. W2005-01687-COA-R3-JV, 2007 WL 152537, at *10 (Tenn. Ct. App. Jan. 22, 2007)(citing *see In re C.K.G.*, 173 S.W.3d 714, 732 (Tenn. 2005) (citing *Hass v. Knighton*, 676 S.W.2d 554, 555 (Tenn. 1984))).

We have consistently noted that a trial court's determinations on matters of child custody are "'among the most important decisions confronting a trial court in a divorce case.'" *Chaffin v. Ellis*, 211 S.W.3d 264, 286 (Tenn. Ct. App. 2006)(quoting *Rice v. Rice*, No. M1998-00973-COA-R3-CV, 2001 WL 812258, at *2 (Tenn. Ct. App. July 19, 2001)). The paramount consideration is the needs of the child; "the desires of the parents are secondary." *Id.* When deciding which parent to designate as the primary residential parent, the trial court must conduct a "comparative fitness" analysis. This analysis requires the court to determine which of the parents would be comparatively better fit to be the primary residential parent in light of the factors set forth in Tennessee Code Annotated § 36-6-106.[2]

---

[2]The trial court must consider, where applicable,

(continued...)

*Id.* (citing *Bah v. Bah*, 668 S.W.2d 663, 666 (Tenn. 1983)). This is a fact-driven inquiry, and the trial court must take all of the facts and circumstances of the case into consideration. *Id*. (citing *Nichols v. Nichols*, 792 S.W.2d 713, 716 (Tenn.1990), overruled on other grounds, 924 S.W.2d 623 (Tenn. 1996)). Additionally, under Rule 52 of the Tennessee Rules of Civil Procedure, the trial court must make specific findings of fact to support its determination. *E.g., Eldridge v. Hundley*, No. W2011–00728–COA–R3–JV. 2011 WL 3925563, at *3 (Tenn. Ct. App. Sept. 8, 2011).

"It is well settled that, in the absence of a transcript or statement of the evidence, there is a conclusive presumption that there was sufficient evidence before the trial court to support its judgment, and this Court must therefore affirm the judgment." *Outdoor Mgmt., LLC v. Thomas*, 249 S.W.3d 368, 377 (Tenn. Ct. App.2007)(citation omitted). The appellant carries the burden to demonstrate that the evidence preponderates against the judgment of the trial court. *Id*. (citation omitted). The appellant also bears the burden to provide this Court with a transcript of the evidence or a statement of the evidence from which we may determine whether the evidence preponderates against the trial court's findings. *Id*. at 378 (citation

---

[2](...continued)

(1) The love, affection and emotional ties existing between the parents . . . and the child;

(2) The disposition of the parents . . . to provide the child with food, clothing, medical care, education and other necessary care and the degree to which a parent . . . has been the primary caregiver;

(3) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment . . .;

(4) The stability of the family unit of the parents . . .;

(5) The mental and physical health of the parents . . .;

(6) The home, school and community record of the child;

(7)(A) The reasonable preference of the child, if twelve (12) years of age or older;

(B) The court may hear the preference of a younger child on request. The preferences of older children should normally be given greater weight than those of younger children;

(8) Evidence of physical or emotional abuse to the child, to the other parent or to any other person . . .;

(9) The character and behavior of any other person who resides in or frequents the home of a parent . . . and the person's interactions with the child; and

(10) Each parent's . . . past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents . . . to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, consistent with the best interest of the child.

Tenn. Code Ann. § 36–6–106(a) (Supp. 2011).

omitted). In the absence of a transcript or statement of the evidence, we may reverse the trial court's judgment only if we find that the trial court committed an error of law based on the "technical record" transmitted to us. *Uria v. Uria*, No. M2011–02751–COA–R3–CV, 2013 WL 485676, at *8 (Tenn. Ct. App. Feb. 6, 2013)(citing *In re M.R.*, 2008 WL 2331030, at *3 (citing *In re Conservatorship of Chadwick*, 2008 WL 803133, at *2)).

As noted above, the record transmitted to this Court contains only a partial transcript. Additionally, the brief partial statement of the evidence contains only a description of Father's testimony at a 2010 hearing. There is nothing in this technical record to indicate that the trial court conducted a comparative fitness analysis as required by Tennessee Code Annotated § 36-6-106(a). Thus, we cannot presume the trial court's judgment to be correct where it appears that the trial court made no findings as mandated by the statute. Accordingly, although we agree with the trial court's determination that an alternate week parenting schedule is not practicable in this case, where the child would be required to attend two different schools on an alternating weekly basis (we express no opinion with respect to whether the school districts would permit such an arrangement), we must remand this matter to the trial court to conduct a comparative fitness analysis consistent with section 36-6-106(a), and for findings consistent with Rule 52 of the Rules of Civil Procedure.

### *Holding*

In light of the foregoing, this matter is remanded to the trial court for further proceedings, if necessary, and for findings consistent with this Opinion. Because the parties' child is now in school and Mother and Father reside more than 100 miles apart, the trial court's September 2011 order will remain in force pending final resolution of this matter. Costs on appeal are taxed one-half to the Appellant, Nathan Alan Riedel, and one-half to the Appellee, Kristen Elizabeth Riedel.

_____
DAVID R. FARMER, JUDGE