# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### July 11, 2013 Session

## PENELOPE LYNNE ALLEN v. GORDON CARMACK ALLEN

**Appeal from the Chancery Court for Sumner County**
**No. 2000D412      Tom E. Gray, Chancellor**

---

**No. M2012-02266-COA-R3-CV - Filed October 9, 2013**

---

Mother and Father were divorced in 2001 and the Final Decree required Father to pay a fixed amount to Mother each month as child support in addition to a percentage of his fluctuating income. Father was also ordered to provide Mother with proof of his income on a quarterly basis. In response to Mother's motion to modify in 2003, the trial court averaged three years of Father's gross income and increased Father's monthly child support payments. Mother moved in 2011 to hold Father in contempt of court for failing to continue providing her with proof of his income and sought a child support arrearage based on Father's failure to pay a percentage of his fluctuating income for the years 2003 through 2010. The trial court awarded Mother the arrearage she sought and found Father was in civil contempt for failing to continue providing Mother with proof of his income. The court awarded Mother her attorney's fees based on Father's civil contempt. Father appealed, and we reverse the trial court's judgment. The governing statute requires child support payments to be for a definite amount, not an amount that fluctuates. The existing order did not include the requirement that Father provide proof of income. Therefore, we also reverse the trial court's award to Mother of attorney's fees incurred in the civil contempt proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed**

PATRICIA J. COTTRELL, P.J., M.S., delivered the opinion of the Court, in which ANDY D. BENNETT and RICHARD H. DINKINS, JJ., joined.

Stephen Walker Pate, Murfreesboro, Tennessee, for the appellant, Gordon Carmack Allen.

Russell E. Edwards, Michael Wayne Edwards, Hendersonville, Tennessee, for the appellee, Penelope Lynne Allen.

# OPINION

## I. BACKGROUND

Penelope Lynne Allen ("Mother") and Gordon Carmack Allen ("Father") were divorced in February 2001. They had one child who was four years old at the time of the divorce. In its Final Decree the trial court named Mother the primary residential parent and ordered Father to pay child support of $642 per month as well as 21% of the net sum of any overtime, bonus, profit-sharing, or incentive program payments he received. The trial court also ordered Father to provide Mother with a copy of his payroll stubs or vouchers on a quarterly basis.

In December 2003, the trial court increased Husband's child support payments to $1,038 per month and found Father was in civil contempt for failing to provide Mother with verification of his income on a quarterly basis since the entry of the Final Decree.[1] The trial court wrote:

> The Court finds that the average earnings for three years of the Father is $81,594.00 or $6,800 per month and child support is set at $1,038.00 effective the date of the filing of the Petition, or October 7, 2003.

The court did not specify in its December Order that Father was required to continue providing Mother with proof of his income on a quarterly basis. Moreover, the court did not mention anything about Father's earlier obligation to pay 21% of any overtime, bonus, profit-sharing, or incentive program payments he received as additional child support.

In September 2011 Mother filed a petition in which she (1) asked the trial court to find Father in civil contempt based on his failure to provide Mother with proof of his income since 2003 and (2) sought an arrearage of child support payments based on Father's actual income from 2003 through 2010. Mother also sought an award of her attorney's fees. The trial court held a hearing in May 2012 and issued an Order and Memorandum in July finding Father in civil contempt for failing to comply with the 2001 Final Order's proof of income requirement and ordering Father to pay a child support arrearage in the amount of $21,700.

---

[1]The record does not include the parties' filings leading up to the December 2003 Order increasing Father's child support payments, so we have to assume Mother filed a petition for modification of child support in which she asked the court to increase Father's child support payments based on an increase in his income and to find Father in civil contempt for failing to provide her with proof of his income on a quarterly basis.

## II. TRIAL COURT'S RULINGS

In granting Mother the relief she sought, the trial court wrote the following in its Order and Memorandum:

> The requirement to provide the proof of income on a quarterly basis has not been modified by any order. Child support of $1,038.00 was set . . . based on an average income of $81,594.00 determined using a three year period. The $1,038.00 was a flat percent of gross income with deductions as provided in the child support guidelines existing at the time of the divorce.
>
> The child support of $1,038.00 per month was accepted by the parties at the hearing for final disposition on the 14th day of November, 2003.
>
> The court finds Gordon Carmack Allen to be in willful Contempt for failure to provide income information on a quarterly basis.

The trial court then considered Father's annual adjusted gross income for the years 2004 through 2010 and applied the provision from the 2001 Final Decree of Divorce that required Father to pay Mother 21% of "the net sum of said funds." The court found Father had paid Mother $1,038 each month for the years in question, but the court then determined that Father owed an additional $21,700 in child support for those years. The court arrived at this $21,700 figure by considering Father's actual income for the years 2004 through 2010, then calculating 21% of his monthly income to determine the amount he was obligated to pay as child support each month. The court found that Father had overpaid in some years, that he had underpaid in other years, and that the net difference was an underpayment of $21,700.

Mother and Father both filed motions to alter or amend the court's judgment. Mother sought an award of attorney's fees and an award of statutory interest. Father sought, *inter alia*, a reconsideration of the court's judgment that Father was still bound by the terms of the Final Decree, dating from 2001, in light of the trial court's 2003 Order modifying his child support obligation, which was based on an average of three years of Father's total earnings.

In an Order dated October 2012, the trial court awarded Mother attorney's fees in the amount of $10,142.36 as well as statutory interest on the child support award. The court's award of attorney's fees was based on "Father's acts of contempt set forth in the Court's Memorandum." The court denied Father's request to modify its child support arrearage award.

Father filed a notice of appeal and argues the trial court erred by (1) ruling Father is liable for a child support arrearage based on the terms of the 2001 Final Decree requiring Father to pay 21% of his fluctuating income as child support, and (2) awarding Mother attorney's fees in the amount of $10,142.36. Mother seeks her attorney's fees incurred on appeal.

### III. CHILD SUPPORT

Our review on appeal of the trial court's findings of fact is *de novo* with a presumption of correctness, unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *Blair v. Brownson*, 197 S.W.3d 681, 684 (Tenn. 2006); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001); *Hass v. Knighton,* 676 S.W.2d 554, 555 (Tenn. 1984). We review a trial court's conclusions of law *de novo*, with no presumption of correctness. *Whaley v. Perkins*, 197 S.W.3d 665, 670 (Tenn. 2006); *Union Carbide Corp. v. Huddleston,* 854 S.W.2d 87, 91 (Tenn. 1993).

When it comes to setting child support, trial courts have discretion to determine the amount within the confines of the child support guidelines promulgated by the Tennessee Department of Human Services. *Hommerding v. Hommerding*, 2009 WL 1684681, at *3 (Tenn. Ct. App. June 15, 2009); *Hanselman v. Hanselman*, 2001 WL 252792, at *2 (Tenn. Ct. App. Mar. 15, 2001); *see* Tenn. Code Ann. § 36-5-101(e)(2) (courts shall apply child support guidelines as rebuttable presumption when setting child support). When an appellate court reviews the child support a trial court has set, we must consider "(1) whether the decision has a sufficient evidentiary foundation, (2) whether the court correctly identified and properly applied the appropriate legal principles, and (3) whether the decision is within the range of acceptable alternatives." *State ex rel. Vaughn v. Kaatrude*, 21 S.W.3d 244, 248 (Tenn. Ct. App. 2000). We will not substitute our judgment for that of the trial court simply because we might have selected another alternative, but we will set aside a discretionary decision if it is not supported by the evidence or if it is contrary to the law. *Id*.

The evidence in this case is that Father's income fluctuated depending on overtime, bonus, profit-sharing, or incentive program payments he received. The child support guidelines have evolved over time, but at least since the *Hanselman* opinion, in March 2001, the law has been that child support must be calculated in a definite amount that is payable in installments rather than in an amount that fluctuates month to month. *Hanselman*, 2001 WL 252792, at *3. The *Hanselman* court specifically disapproved the practice of setting a percentage of fluctuating income as support.

> [S]everal courts, responding to the uncertainty created by fluctuating income,
> fashioned floating child support awards based on a percentage of the obligor

parent's income at the time. This approach is inconsistent with the statutory requirement that child support must be calculated in a "definite amount" that is paid in installments. Tenn. Code Ann. § 36-5-101(a)(2)(A).

The child support guidelines themselves now provide the approach for dealing with fluctuating income. If an obligor parent receives variable income, such as commissions, bonuses, or overtime pay, the variable income must be "averaged" and added to the obligor spouse's fixed salary. Tenn. Comp. R. & Regs. 1240-2-4-.03(3)(b). The guidelines themselves do not prescribe how variable income should be averaged. Therefore, it is left to the courts to determine on a case-by-case basis the most appropriate way to average fluctuating income.

*Hanselman,* 2001 WL 252792, at *3 (footnotes excluded).[2]  The Court of Appeals in *Sparkman v. Lyle* was unequivocal on this issue:

The Tennessee General Assembly has made it perfectly clear: provisions that provide for fluctuating child support obligations are not permissible. *See* Tenn. Code Ann. § 36-5-101(a)(2). Instead of providing a formula by which a child support obligation might fluctuate, the courts of this state are under an affirmative obligation to provide for the future support of a child "by fixing some *definite amount or amounts* to be paid in monthly, semimonthly, or weekly installments, or otherwise, as circumstances may warrant. . . ." Tenn. Code Ann. § 36-5-101(a)(2) (emphasis added).

2009 WL 2567867, at *2 (Tenn. Ct. App. Aug. 19, 2009); *see Brown v. Brown*, 2006 WL 236933, at *2 (Tenn. Ct. App. Jan. 31, 2006) (child support orders must set a definite amount due each month and cannot fluctuate or be based on a percentage of income).

Recognizing that the guidelines do not provide a method or instruct the courts about how to average a parent's fluctuating income, the courts determine on a case-by-case basis the most appropriate way to average fluctuating income. *Grisham v. Grisham*, 2011 WL 607377, at *7 (Feb. 22, 2011); *see Norman v. Norman*, 2003 WL 724677, at *10 (Tenn. Ct.

---

[2]The child support guidelines have been modified since *Hanselman*, and the relevant guideline is now found at Tenn. Comp. R. & Regs. 1240-2-4-.04(3)(b):

Variable income such as commissions, bonuses, overtime pay, dividends, etc. shall be averaged over a reasonable period of time consistent with the circumstances of the case and added to a parent's fixed salary or wages to determine gross income.

App. Mar. 4, 2003) (courts generally average an individual's income over as long a time period as circumstances permit).

The record here shows that in 2003, when the trial court modified Father's child support obligation, the trial court averaged three years of Father's gross income and arrived at an annual income of $81,594.00.[3]  Based on this average, the court determined Father was responsible for paying $1,038 per month for child support.  The trial court's 2003 Order did not incorporate or reference any part of the Final Decree.  Specifically, the trial court did not mention the earlier requirement of providing Mother with proof of Father's income on a quarterly basis or of paying 21% of any overtime, bonus, profit-sharing, or incentive program payments he received.[4]

At the time of the 2003 order, the cases described above had been decided, and it appears to us that the trial court abandoned its earlier method of calculating support (ordering a percentage of fluctuating income over a base amount) and conformed its award of support to the holdings in those cases.  The court, in its own words, averaged Father's income and applied the guidelines to establish a definite amount of support due each month.

Thus, Father's overtime, bonus, etc. were included in the averaging of his income over the past three years.  The trial court could not have intended to require him to pay a percentage of his fluctuating income in addition to the definite amount that was based on his total income.  That would amount to double counting that type of income.  Additionally, we presume the trial court intended to award a definite amount, instead of an amount that fluctuated, in compliance with our interpretation of the statute's clear language.

Accordingly, we conclude that the 2003 order that set Father's child support at a definite amount per month replaced the earlier order that was based upon a method of calculation that had been determined impermissible.  The 2003 order did not require that 21% of Father's income over this base salary be paid as child support.  Even if it had purported to do so, we would not have enforced such an order.

---

[3]In May 2012 Father testified that the trial court calculated his monthly child support obligation in 2003 to be $1,038, based on his gross income, "and that was everything included."

[4]Not only would requiring Father to pay a percentage of his income as child support violate the applicable statute, but also requiring Father to pay an additional 21% of any overtime, bonus, profit-sharing, or incentive program payments he received would have also been impermissible.

Mother acknowledged that Father has consistently made child support payments of $1,038, which is the amount he was ordered to pay in 2003. Therefore, he was not in arrears in his support. To hold Father liable for an amount above the $1,038 per month ordered would be to modify his child support obligation, and such an obligation cannot be modified retroactively. *See Tinsley v. Tinsley*, 2002 WL 31443210, at *5-6 (Tenn. Ct. App. Nov. 1, 2002) (retroactive modification of existing child support order is prohibited by statute); *see* Tenn. Code Ann. § 36-5-101(f)(1) (judgment for child support "shall not be subject to modification as to any time period or any amounts due prior to the date that an action for modification is filed").

We therefore reverse the trial court's order determining that Father owes an arrearage of child support and awarding that amount to Mother.

## IV. ATTORNEY'S FEES

We next turn to the trial court's award to Mother of attorney's fees in the amount of $10,142.36. The trial court was clear that this fee was awarded "as a result of Father's acts of contempt set forth in the Court's Memorandum." In its Memorandum, the trial court ruled that it was finding Father "in willful Civil Contempt of court for failure to comply with the Final Decree of Divorce concerning child support in that he has not supplied the information to [Mother]."[5]

> Civil contempt claims based upon alleged willful disobedience of a court order have four essential elements: (1) the order alleged to have been violated must be "lawful"; (2) the order alleged to have been violated must be clear, specific, and unambiguous; (3) the person alleged to have violated the order must have actually disobeyed or otherwise resisted the order; and (4) the violation of the order must have been "willful."

*Lovlace v. Copley*, __S.W.3d __, 2013 WL 4773078 at *27 (Tenn. Sept. 6, 2013), (footnote omitted) (citing *Konvalinka v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, 249 S.W.3d 346, 354–55 (Tenn. 2008)). Whether a party violated an order, and whether a violation was willful, are factual issues that appellate courts review *de novo*, with a presumption of correctness afforded the trial court's findings. *Konvalinka*, 249 S.W.3d at 356–57.

---

[5]Tenn. Code Ann. § 29-9-102(3) authorizes a court to punish for contempts of court based on a party's willful disobedience of a court's order.

The trial court in this case found Father violated the Final Decree dating from 2001, issued when the parties were divorced, not the Order from 2003 that modified (and increased) Father's child support obligation. The language of the Final Decree that the court found Father violated is as follows:

> Mr. Allen shall provide to Mrs. Allen, on a quarterly basis, a copy of his payroll stubs, or vouchers and in the event he receives any overtime, bonus, profit-sharing or incentive program payment, he will pay directly to Mrs. Allen, a sum equal to TWENTY-ONE PERCENT (21%) of the net sum of said funds. This requirement shall continue until the minor child is EIGHTEEN (18) years old or graduates with his class from high school, whichever is the latter event to occur.

The requirement that Father provide Mother with proof of his income appears to be tied to the requirement that he pay Mother 21% of his fluctuating income as child support. When the trial court modified Father's child support obligation in 2003, the trial court averaged Father's gross earnings from the previous three years and increased Father's child support obligation from $642 per month to $1,038 per month. The court did not mention, or refer to, the requirement from the Final Decree that Father provide Mother with proof of his income on an ongoing basis or that Father pay 21% of his fluctuating income to Mother as additional child support (which, as discussed above, is impermissible).

Once the trial court averaged Father's gross income and modified his child support obligation in 2003, Father was reasonable in assuming the 2003 Order replaced the child support portion of the Final Decree and that he was no longer required to comply with either the proof of income or 21% payment portion of the Final Decree.

Additionally, we hold that the 2003 Order does not clearly require Father to provide proof of income. It appears to replace the earlier award of support. Thus, we cannot hold that any continuing order to provide proof of income was "clear, specific, and unambiguous" in the 2003 order.

We reverse the trial court's judgment that Father was in civil contempt for failing to provide Mother with proof of his income and also reverse the trial court's award to Mother of attorney's fees in the amount of $10,142.36.

Mother seeks an award of the attorney's fees she incurred on appeal pursuant to Tenn. Code Ann. § 36-5-103(c). This section permits a court to award a prevailing party reasonable attorney's fees incurred in enforcing a decree for alimony and/or child support. Mother is not a prevailing party on appeal and is therefore not entitled to an award of her fees.

## V. Conclusion

For the reasons stated above, the trial court's judgment awarding Mother an arrearage of child support is reversed and the trial court's order awarding Mother attorney's fees based on Father's civil contempt is reversed. Costs of this appeal shall be taxed to the appellee, Penelope Lynne Allen, for which execution shall issue if necessary.

_____
PATRICIA J. COTTRELL, JUDGE