# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
November 19, 2013 Session

## STELLA MAY WELCH v. DONALD LEE WELCH

**Direct Appeal from the General Sessions Court for White County**
**No. 2012-CV-15766      Sam Benningfield, Jr., Judge**

**No. M2013-01025-COA-R3-CV - Filed January 10, 2014**

This is a divorce action.  Wife appeals the trial court's judgment naming Husband primary residential parent of the parties' minor child and classifying real property as Husband's separate property.  Wife also asserts the trial court erred in dividing the parties' property notwithstanding classification of the real property.  We affirm the trial court's classification and division of property.  We vacate the trial court's judgment with respect to naming Husband primary residential parent of the parties' minor child and awarding the parties equal parenting time, and remand the matter to the trial court to engage in a comparative fitness analysis as required by Tennessee Code Annotated § 36-6-106, and for findings as required by Rule 52 of the Tennessee Rules of Civil Procedure.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the General Sessions Court Affirmed in part, Vacated in part & Remanded**

DAVID R. FARMER, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and J. STEVEN STAFFORD, J., joined.

Randy S. Chaffin, Cookeville, Tennessee, for the appellant, Stella May Welch.

Richy L. Jenkins, Sparta, Tennessee, for the appellee, Donald Lee Welch.

## MEMORANDUM OPINION[1]

---

[1]Rule 10 of the Rules of the Court of Appeals of Tennessee provides:
This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

This appeal arises from a divorce action filed by Stella May Welch (Ms. Welch) against Donald Lee Welch (Mr. Welch) in the General Sessions Court for White County in March 2012. The facts relevant to our disposition of this matter on appeal are largely undisputed. The parties were married in June 2001; one child, J.W., was born of the marriage in 2004. In her 2012 complaint, Ms. Welch alleged irreconcilable differences and inappropriate marital conduct as grounds for divorce. Mr. Welch answered in May 2012, denying allegations of irreconcilable differences and inappropriate marital conduct and counter-claiming for a divorce based on inappropriate marital conduct. Following a hearing on July 30, 2012, the trial court entered a temporary parenting plan granting Mr. Welch parenting time from after school on Friday until Monday morning and stating that Ms. Welch would be responsible for J.W. at all other times. Mediation resolved some issues, and the matter was tried by the trial court in March 2013. The trial court awarded Mr. Welch a divorce based on inappropriate marital conduct; found that the home in which the parties resided during their marriage was Mr. Welch's separate property and that transmutation had not occurred; awarded the parties retirement accounts held in their individual names; and awarded Ms. Welch the personal property which she requested during the litigation of the matter. The trial court also found that Ms. Welch was entitled to an equitable division of the appreciation in value of Mr. Welch's real property in the amount of $30,000. Finally, the trial court found that it was in the best interests of the parties' child to share parenting time equally, and determined that Mr. Welch should be named primary residential parent of J.W. where Mr. Welch retained the home in which J.W. had resided most of his life. Mr. Welch was ordered to pay retroactive child support to Ms. Welch in the amount of $2,526 for February through July 2012, and prospective child support in the amount of $316.00 per month. The trial court entered final judgment on April 23, 2013, and Ms. Welch filed a timely notice of appeal to this Court.

### *Issues Presented*

Ms. Welch presents the following issues for our review, as we reword them:

(1)     Whether the trial court erred by classifying real property located on Eastland Road in Sparta as Mr. Welch's separate property.

(2)     Whether the trial court erred in its division of marital property notwithstanding the classification of property.

(3)     Whether the trial court erred by naming Mr. Welch primary residential parent of the parties' minor child.

(4)    Whether the trial court erred by awarding the parties equal parenting time.

***Discussion***

It is undisputed that the real property at issue in this case was owned by Mr. Welch prior to the parties' marriage, and that it was titled in his name only. Ms. Welch asserts, however, that the trial court erred by failing to classify the property as marital property under the doctrine of transmutation. She asserts that when the parties married, the property was unimproved except for a barn, and that over the course of the marriage the parties constructed a home - which is not yet fully finished - in part with marital funds. She asserts that she worked to clear the land and assisted with the construction, that marital funds were used to construct the home "up to the basement," and that funds loaned to Mr. Welch by his father were repaid, in part, with marital funds.

The division of property in a divorce proceeding "begins with the identification of all property interests," followed by the classification of all "property as either marital or separate." *Keyt v. Keyt*, 244 S.W.3d 321, 328 (Tenn. 2007). Property acquired prior to a marriage is separate property. Tenn. Code. Ann § 36-4-121(b)(2)(A); *Malmquist v. Malmquist*, No. W2007-02373-COA-R3-CV, 2011 WL 1087206, at *24 (Tenn. Ct. App. March 25, 2011). Transmutation "occurs when separate property is treated in such a way as to give evidence of an intention that it become marital property." *Id.* at 24 (citations omitted). For example, property purchased with separate funds but titled in joint tenancy or in the names of both spouses may be considered to have been transmuted to marital property. *Eldridge v. Eldridge*, 137 S.W.3d 1, 13-14 (Tenn. Ct. App. 2002)(citation omitted). Dealing with property in such ways creates a rebuttable presumption that the property has been gifted to the marital estate. *Id.* at 14 (quoting *Batson v. Batson*, 769 S.W.2d 849, 858 (Tenn. Ct. App 1988). This presumption may "be rebutted by evidence of circumstances or communications clearly indicating an intent that the property remain separate." *Id*. (quoting *id.* (quoting 2 Homer H. Clark, *The Law of Domestic Relations in the United States* § 16.2 at 185)). The classification of property as separate or marital presents a question of fact which must be determined in light of all the relevant circumstances. *Snodgrass v. Snodgrass*, 295 S.W.3d 240, (Tenn. 2009)(citations omitted). We review a trial court's factual findings *de novo* on the record, with a presumption of correctness for the trial court's findings. We will not reverse a trial court's findings of fact unless the evidence preponderates against them. Tenn. R. App. P. 13(d); *Berryhill v. Rhodes*, 21 S.W.3d 188, 190 (Tenn. 2000).

As noted above, it is undisputed that the real property at issue in this case was owned by Mr. Welch prior to the marriage, and Ms. Welch does not dispute that an original construction loan was taken in Mr. Welch's name only. It also is undisputed that the home

remains unfinished, that the parties were unable to finance further construction through a financial institution, and that Mr. Welch borrowed approximately $90,000 from his father to continue construction. Upon review of the record, we note that Mr. Welch testified that the parties used joint funds to construct the home "up to the basement," that Ms. Welch helped with construction of the home, that the funds he borrowed from his father were repaid, in part, with funds earned by both parties when Ms. Welch was working outside the home; and that there was no loan documentation indicating the outstanding balance of the loan. When asked whether he would agree that Ms. Welch owned part of the property, Mr. Welch replied "[p]art of the house, yes." Mr. Welch also testified that it was the parties' intent to reside in the home for "the rest of [their] lives until [Ms. Welch] decided to go another way."

In light of the totality of the testimony in this case, it is clear that constructing a home on 26-acres of unencumbered real property owned by Mr. Welch prior to the marriage was a marital project, and that Ms. Welch contributed to the appreciation in value of the property. We cannot say, however, that the evidence preponderates against the finding of the trial court that the property remained Mr. Welch's separate property. We affirm on this issue.

We turn next to Ms. Welch's assertion that, notwithstanding the trial court's determination that the real property is properly classified as separate property, the trial court erred in failing to divide the parties' marital property equitably. She asserts the trial court erred by failing to award her at least 50 percent of the marital estate.

Rule 7 of the Court of Appeals provides:

(a) In any domestic relations appeal in which either party takes issue with the classification of property or debt or with the manner in which the trial court divided or allocated the marital property or debt, the brief of the party raising the issue shall contain, in the statement of facts or in an appendix, a table in a form substantially similar to the form attached hereto. This table shall list all property and debts considered by the trial court, including: (1) all separate property, (2) all marital property, and (3) all separate and marital debts.

(b) Each entry in the table must include a citation to the record where each party's evidence regarding the classification or valuation of the property or debt can be found and a citation to the record where the trial court's decision regarding the classification, valuation, division, or allocation of the property or debt can be found.

(c) If counsel disagrees with any entry in the opposing counsel's table,

-4-

counsel must include in his or her brief, or in a reply brief if the issue was raised by opposing counsel after counsel filed his or her initial brief, a similar table containing counsel's version of the facts.

We have repeatedly held that the failure to comply with Rule 7 waives issues relating to the requirements of the Rule. *E.g., Chambers v. Chambers*, No. W2012-00068-COA-R3-CV, 2013 WL 375403, at *2 (Tenn. Ct. App. Jan. 31, 2013); *Butcher v. Butcher*, No. W2011-01808-COA-R3CV, 2012 WL 2107977, at *2 (Tenn. Ct. App. June 12, 2012); *Forbess v. Forbess*, No. W2011-01105-COA-R3-CV, 2011 WL 6153607, at *6 (Tenn. Ct. App. Dec. 9, 2011), perm. app. denied (Tenn. Apr. 12, 2012). This Court does not have a duty to search a trial court record to discern the valuation of the couple's property. We previously have stated that a table in compliance with Rule 7 is necessary to our consideration of property division issues in a divorce case, and that the issue will be waived for failure to comply with Rule 7. *Id.* (citation omitted). We accordingly find the issue waived in this case.

We next turn to Ms. Welch's assertion that the trial court erred by naming Mr. Welch primary residential parent of J.W. where J.W. suffers from spastic cerebral palsy and other medical conditions; where she is a licensed practical nurse and has been J.W.'s primary care-giver; where Mr. Welch works a night shift from 11:00 PM until 7:00 AM and spent little time with J.W. prior to the parties' separation. Ms. Welch acknowledges that Mr. Welch loves J.W. and has spent more time with him since the parties separated, but contends that the parenting schedule set by the trial court would result in Mr. Welch's parents being J.W.'s primary care-givers.

We review the trial court's determination of child custody under an abuse of discretion standard, affording the trial court great deference. *E.g., Herrera v. Herrera*, 944 S.W.2d 379, 385 (Tenn. Ct. App.1996). This deferential review is premised on the assumption that the trial court first considered the best interests of the child in making the custody determination and did not act arbitrarily. *Id.* at 386. Although we will not disturb the trial court's determinations absent an abuse of discretion, the trial court's discretion is not without limit and its determinations must be based on the evidence and appropriate legal principles. *Hogue v. Hogue*, 147 S.W.3d 245, 251 (Tenn. Ct. App. 2004).

The trial court is required to engage in a comparative fitness analysis of the parents when naming a primary residential parent. *Gaskill v. Gaskill*, 936 S.W.2d 626, 630 (Tenn. Ct. App. 1996). When so doing, it must consider the factors outlined by the legislature as codified at Tennessee Code Annotated § 36-6-106.[2] *Id*. We review the trial court's

_____

[2]The trial court must consider, where applicable,

(continued...)

determination of the facts regarding the comparative fitness of the parents *de novo*, presuming those findings to be correct unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *In re Clark*, No. W2005-01687-COA-R3-JV, 2007 WL 152537, at *10 (Tenn. Ct. App. Jan. 22, 2007)(citing *see In re C.K.G.*, 173 S.W.3d 714, 732 (Tenn. 2005) (citing *Hass v. Knighton*, 676 S.W.2d 554, 555 (Tenn.1984))).

Upon review of the record, we observe that the trial court appears to have named Mr. Welch primary residential parent based solely on the fact that Mr. Welch would reside in the house which has been J.W.'s home for most of his life. However, the trial court also found that a shared parenting schedule is in J.W.'s best interest, and fashioned a parenting schedule awarding the parties approximately equal parenting time, notwithstanding that it is undisputed that J.W. has considerable care needs and Ms. Welch has been his primary care-giver. There is nothing in the record transmitted to this to indicate that the trial court conducted a comparative fitness analysis as required by Tennessee Code Annotated § 36-6-106(a). The trial court made no factual findings with respect to the factors provided by the Code to support its judgment regarding parenting issues. Accordingly, we must remand this matter to the trial court to conduct a comparative fitness analysis consistent with section 36-

--------

[2](...continued)

      (1) The love, affection and emotional ties existing between the parents . . . and the child;

      (2) The disposition of the parents . . . to provide the child with food, clothing, medical care, education and other necessary care and the degree to which a parent . . . has been the primary caregiver;

      (3) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment . . .;

      (4) The stability of the family unit of the parents . . .;

      (5) The mental and physical health of the parents . . .;

      (6) The home, school and community record of the child;

      (7)(A) The reasonable preference of the child, if twelve (12) years of age or older;

      (B) The court may hear the preference of a younger child on request. The preferences of older children should normally be given greater weight than those of younger children;

      (8) Evidence of physical or emotional abuse to the child, to the other parent or to any other person . . .;

      (9) The character and behavior of any other person who resides in or frequents the home of a parent . . . and the person's interactions with the child; and

      (10) Each parent's . . . past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents . . . to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, consistent with the best interest of the child.

Tenn. Code Ann. § 36-6-106(a) (Supp. 2013).

6-106(a), to name a primary residential parent and to fashion a parenting schedule consistent with its comparative fitness analysis, and for findings consistent with Rule 52 of the Rules of Civil Procedure.

## *Holding*

In light of the foregoing, we affirm the judgment of the trial court with respect to issues of property classification and division. We vacate the trial court's judgment with respect to primary residential parent status and parenting time, and remand this matter for further proceedings consistent with this Opinion. In light of J.W.'s medical needs and the heightened need for consistent and constant care, the trial court's July 26, 2012, temporary parenting plan will remain in force, provided that J.W. will remain domiciled in White County, pending final resolution of the matter. Costs on appeal are taxed one-half to the Appellee, Donald Lee Welch, and one-half to the Appellant, Stella May Welch, and her surety, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE